March 22, 1909.

————o————

## No. 4680.

(Court of Appeal, Pasish of Orleans.)

## SAMUEL F. HEASLIP VS. NEW ORLEANS RAILWAY AND LIGHT COMPANY.

Questions of fact alone are involved in this case, but the issues are determined not on the credibility of witnesses, but on appreciation of evidence.

Appeal from Civil District Court, Division "D."

Rouse, Grant & Grant, for Plaintiff and Appellee.

Dart & Kernan, for Defendant and Appellant.

ESTOPINAL, J. Plaintiff sued the defendant to recover two hundred and seventy dollars $270), averring substantially that on the 17th day of March, 1908, at about 4 o'clock p. m., a four-mule float belonging to him, and in charge of a competent driver, was being cautiously driven across Canal Street at the intersection of Fulton Street; that defendant had parked its cars on both sides of said intersection at Fulton Street, and that for this reason a person driving through the intersection of that street going uptown was unable to see the approach of cars going towards the river and using the open tracks on the upper side of the Canal Street neutral ground; that the parking of said cars by defendant was an unlawful act; that a car of the Esplanade Belt line coming in Canal Street on the upper track and traveling at a rapid rate of speed ran into the leading team of the float, and so badly injured the mule that it had to be killed.

The petition avers specifically "that if defendant had not obstructed the view of said upper incoming track by said parked cars, or had stopped said car on the near side of said crossing as required by its own rules and the police regulation of the city, or had the motorman in charge even sounded his gong and checked the speed of his car and brought it under control, said accident would not have occurred, and that defendant was solely in fault.

Defendant tendered the general issue, and a plea that the accident was caused by the contributory negligence and incompetency of the float driver.

The judgment below was in favor of plaintiff, and defendant has appealed.

Our examination of this record leads us to a conclusion contrary to that reached by our learned brother of the District Court.

In a case where facts are involved and where there appears to be a conflict of testimony, a question of credibility arises, and this Court in such cases has uniformly sustained the views of the trial Court.

In the present suit the main facts upon which the result must be based, not being seriously disputed, the question becomes

—235—

one, not of credibility of witnesses, but of appreciation of the evidence.

The value of the mule is not disputed.

We shall first consider the facts as they relate to the defendant, and ascertain whether negligence attaches to it.

Plaintiff charges that the "parking of cars" at the intersection of Fulton Street was unlawful, and was one of the company's acts which caused the accident.

The record negatives this averment absolutely, and it must therefore be eliminated as constituting one of the elements responsible for the accident.

. It is clair that the defendant had the right to "park" its cars in Canal Street at the intersection of Fulton Street.

Ordinance No. 205, . C. S., approved September 5th, 1900, makes the following provision:

"A neutral ground sixty (60) feet wide, commencing at the north, or lake, side of the property line of North Peters Street, and running towards the lake, and a neutral ground seventy-eight (78) feet, six (6) inches wide, commencing at the south property line or river side of North Peters Street and running towards the river to the north line or lake side of Wells Street, shall be reserved in the center of Canal Street for the exclusive use of the street railways and pedestrians (Sec. 2)."

Sec. 5 of the Ordinance provides: "That the Railroad Company shall use the two inner tracks on the neutral ground on both sides of the street, and the inside loop around the river end at Liberty Place; also the *two side tracks for stands on the south side of the neutral ground between the river side of South Peters and the Lake side of Wells Streets.*"

Fulton Street intersction is between Wells and North Peters, and the defendant company in "parking" its cars at that point was doing nothing more than is permitted by the Ordinance.

The constitutionality of the Ordinance is not attacked, and we need not inquire into that question, nor need we consider whether the ordinance is or not, *ultra vires*.

. Whether the defendant company has the exclusive right to the use of that section of Canal Street or not can be of no advantage to the defendant, because the record shows that the intersection of Fulton Street has always been used as a crossing

for vehicles, and it does not appear that defendant has ever insisted upon its exclusive right to said crossing.

The failure of the company to assert its alleged rights under the ordinance and its failure to give notice to the public who had uninterruptedly and for years used said crossing, that said crossing was not for public use, made it incumbent upon it to observe its own rules to the effect that "motormen must bring their cars to a full stop before crossing any intersecting street." Obviously, these rules were not adopted for the convenience of the company, but are intended to safeguard the public who have at least an equal right to the use of the street.

The rule requiring cars to stop before crossing intersecting streets is one, the non-observance of which is very condemnable, and the Courts would not hesitate in inflicting the payment of damages upon the railroad when it is shown that the person suffering the loss was free of negligence.

This, however, is not found to be the case here. It does not appear that the driver of the float used that diligence which is required to avert a collision. Even if he knew of the rule to stop cars at intersections (which, however, is not shown), it was carelessness and negligence for him to attempt to cross the street without stopping, looking and listening.

The float was being driven across Canal Street from the downtown side. Several lines of cars on which many cars are operated, pass on the tracks on the downtown side of the Canal Street neutral ground going in the direction of the woods, and these same cars wend their way towards the river over the tracks on the uptown side of the neutral ground. In order to identify them, these tracks will be referred to as the "active tracks." A considerable space intervenes between the tracks mentioned, and we find that at the intersection of Fulton Street the Railways Company (Defendant), has the right to park its cars on tracks which are between the "active tracks."

Now, the negro driver of the float testifies that he stopped before proceeding to cross the active downtown tracks to permit a Claiborne car bound from the river and going toward the woods, to pass, and then proceeded slowly across the street. After crossing the active downton side tracks he necessarily passed between "parked cars," which he claims prevented him from seeing the cars moving on the "active" uptown side tracks.

—237—

The cars were lawfully there, the driver of the float knew full well that a great many cars pass on the tracks beyond the parked cars at exceedingly short intervals, and when he approached the active uptown tracks, he should have stopped, looked and listened. The most common, ordinary prudence should have dictated such a course. He was practically reaching another street, and one hazardous to cross by reason of the presence of the "parked cars," but he didn't stop.

The float driver testifies, after telling of the "parked cars" on either side of the Fulton Street intersection, "and when there is a blank space there that you have got to go through, and you have to *watch the trolleys, the wires, if you want to see if there is a car coming.*"

He evidently did not want to see, as the record does not show that he looked up at the wire to watch the trolleys.

It was negligence on the part of the motorman not to stop his car before crossing, and the fact that the car was moving at a slow rate of speed (which we think the record establishes), does not make the negligence less, because, not to have come to a full stop was clearly a violation of the company's rule, but on the other hand it was negligence on the part of the plaintiff not to stop before emerging from between the parked cars preparatory to crossing the "active" tracks on the uptown side of the street. Because the defendant had violated one of its rules and was thereby negligent, was no reason why the plaintiff should have neglected and failed to exercise the ordinary care and precaution which would have avoided the collision. Under the circumstances we do not think plaintiff is entitled to recover.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is hereby annulled, reversed and set aside, and it is now ordered, adjudged and decreed that there be judgment in favor of the defendant dismissing plaintiff's suit with costs in both courts.

March 22, 1909.

Rehearing refused April 7, 1909.

Writ refused by Supreme Court, May 10, 1909.